H. B. CLAFLIN CO. v. KERN et al., (SHWARTZ et al., Interveners.)

(Circuit Court, E. D. Louisiana. April 21, 1893.)

No. 12,059.

1. SALE—DELIVERY—ATTACHMENT.

K. sold to S. a stock of goods in a store at certain percentages of discount, in some classes of goods, on the cost price, and in others on the selling price, the quantities of goods in each case to be ascertained by a count to be made by clerks under supervision of the parties; S. to take possession of the goods as soon as the count was completed. S. gave his check for $40,000 to bind the bargain, to be increased or curtailed according to the result of the count. *Held*, as against an attaching creditor

of K. who levied on the goods before the count was finished, that, but for a subsequent secret agreement as to the price made before there had been a payment, the property in the goods would have been in law that of S. from the time possession was taken under the contract, and was not dependent upon the subsequent count.

**2. SAME--SUBSEQUENT AGREEMENT.**

After the levy of the attachment, S.'s check was by secret agreement between K. and S. placed in the hands of a third person in trust to indemnify S. against loss by the attachment. *Held,* that the legal effect of this arrangement was to subordinate the question of who should receive the consideration to the question as to the validity of the sale, and that it qualified the sale to the same extent as if it had been a part of the original agreement; and hence that the sale was invalid as against the attaching creditor.

At Law. Action by the H. B. Claflin Company against H. Kern & Son. A. Shwartz & Sons intervene. Intervention dismissed, and judgment for plaintiff.

Lazarus, Moore & Lemle, for plaintiff.

Howe & Prentiss, W. S. Benedict, Percy Roberts, B. Titche, W. H. Rogers, and F. J. Dreyfous, for defendants.

BILLINGS, District Judge. On February 20, 1892, the following contract was entered into between the defendants and interveners:

### "Agreement.

"This agreement, entered into this 20th day of February, 1892, between H. Kern & Son of the first part, and A. Shwartz & Sons of the second part, witnesseth: The said H. Kern & Son agree to sell to said A. Shwartz & Sons, who bind themselves to purchase, the entire stock in trade, merchandise, fixtures, and all the appurtenances of the dry-goods store, corner of Canal and Dauphine Sts., with no other exception than one iron safe, one desk, and one stove.

"This sale is to be made on the following basis, viz.:

"First. All piece goods having over ten yards, and all other merchandise upon which the cost price shall be marked, to be taken at said cost, less ten per cent. upon the aggregate amount.

"Second. All remnants or piece goods measuring less than ten yards shall be taken at the selling price, less fifty per cent. upon the aggregate amount.

"Third. All piece goods measuring more than ten yards, and other merchandise upon which the cost price is not marked, shall be taken at the selling price, less twenty-five per cent. upon the aggregate sum.

"Fourth. The invoices for all goods in transit, purchased by said H. Kern & Son, shall be turned over to the purchasers, who, upon delivery of said goods, shall assume the amount of said invoices, and be responsible therefor.

"Fifth. All the furniture, tools, and fixtures (save those above mentioned) shall be accepted for the price of one thousand dollars.

"Sixth. In order to expedite the ascertainment of the price of the within sale, the said parties of the first and second parts shall put at once as many clerks as they may deem necessary (satisfactory to both parties) to measure all unmeasured piece goods, and count all other merchandise. Thereupon persons representing both parties shall call off the said merchandise to others likewise representing both parties, (in such manner as complete fairness shall exist,) who shall enter the merchandise in books numbered alike, a copy of which to belong to either party. As soon as the entire stock shall have been thus entered, the parties of the first and second parts shall proceed without unnecessary loss of time to the ascertainment of the value of said stock of merchandise on the basis above established, which value shall be thereupon paid in cash by said A. Shwartz & Sons to said H. Kern & Son.

"Seventh. The book accounts are not included in this sale, but shall remain the property of said H. Kern & Son; and, for the purpose of facilitating

the settlements of said firm and the collections, they shall be allowed the use of space within the building for a reasonable time, free of rent.

"Eighth. The said A. Shwartz and Sons shall enter into immediate possession of the said stock of merchandise, and be permitted to dispose of the same as they may deem best, after the said goods shall have been duly entered as stipulated in paragraph sixth; nor shall any delay in the ascertainment of the total of the amount of the present sale delay the delivery of said goods to A. Shwartz & Sons.

"Ninth. The lease to the building shall be transferred to said A. Shwartz & Sons by said H. Kern & Son, who shall obtain the consent of the owner thereto.

"Tenth. In order to bind the present sale and agreement, the said A. Shwartz & Sons have presently paid to the said H. Kern & Son, who acknowledge the receipt thereof, the sum of forty thousand dollars; it being well understood that, in the event the stock, etc., hereby sold should be found, under the present agreement, to be worth less than that sum, the said H. Kern & Son shall make good the difference; likewise, should the said stock, etc., be found to exceed the amount herein paid, the said A. Shwartz & Sons shall pay said difference to said H. Kern & Son as soon as ascertained.

"Thirty-three words erased, null and void.

"At the moment of signing it was agreed that, in case of disagreement in the carrying out of the present agreement between the parties of the first and second parts, the matter in difference shall be submitted to arbitration,—Henry Beer to act on the part of H. Kern & Son, and Gus. Lehman, Sr., to act on the part of A. Shwartz & Sons; these two to appoint an umpire; the parties to abide by the award of the majority of the arbitrators.

"Signed in presence of          H. Kern & Son.
    'F. J. Dreyfous.            Emile Kern.
    "G. Lehman.             A. Shwartz & Sons."

The 20th of February fell on Saturday. At from half past 7 to 8 A. M. on Sunday morning, February 21st, the measuring and counting of the merchandise commenced. It was continued during Sunday, and into Monday. The levy of the attachment by the marshal was made on Monday afternoon, between 2:15 and 2:30.

As to the time when the measuring, counting, and entering in the nine books duplicated, without the extension of the price, were completed: On this issue, on the part of the interveners, twenty-nine witnesses were called. Nineteen testified that they individually completed their work before the time of the levy of the writ; one testifies that he does not remember the time; one testifies that his work was completed on Monday evening, or after the levy; one testifies that entries were being made during the time after the levy; four who were not engaged in taking the inventory, and who were not there Sunday or Monday, but reported Tuesday for work, did not know of their own knowledge the time that the inventory was completed, but did not see any inventory going on in their department; one testifies that the inventory was completed before the levy; and the two Shwartzes' testimony is to the effect that while the entries were not entirely completed, there being some things left unfinished, the entries were made before the levy. On the part of the plaintiffs, sixteen clerks testify that they completed the measuring and the counting and entering not till after the time of the levy; one testifies that he completed his work before the levy; one testifies that the clerks were measuring and counting goods after the levy; and two do not remember the time. The chief deputy marshal testifies that the measuring was going on after the levy was made. Another deputy testifies that they were unrolling

goods, and taking down goods from the shelves and placing them on the counter. He says he judges they were measuring. A third deputy, who was not there Monday, but was there Tuesday, does not testify as positively as the others, but says they were taking down goods from the shelves and putting them on the counter, but does not testify that on Tuesday they were counting or measuring. Captain Donnally, the United States marshal, testifies that Monday evening he was at the store, and heard them quarreling and contending about the quantity or measurement of goods. The senior Mr. Kern, one of the defendants, testified that the measuring and the counting were concluded at 5 or 6 o'clock Monday evening. It is to be observed that twenty-three witnesses testify to the completion of the measuring and counting before the levy of the writ. Twenty-four testify, to the contrary, that the levy was made before the counting or measuring was finished. Of the twenty-three witnesses twenty-one were clerks now in the employ of the interveners, and two were the interveners. Of the twenty-four witnesses, nine were in the employ of the defendants; eight were formerly, but not now, in the employ of the interveners; two are now in the employ of the interveners; four were the marshal and his deputies; the remaining one was the senior defendant Kern.

This summary shows that the preponderance of testimony is against the claim of the interveners, and in favor of that of the plaintiff; and I find as a fact that the levy of the writ of attachment was made before the measuring, counting, and entering without extension of the price of the goods was completed.

I find further as facts that on Saturday two checks, amounting in the aggregate to $40,000, were delivered by the interveners to the defendants as the estimated price of the whole stock of goods agreed to be sold. That on Sunday evening the defendants delivered the keys of the store to the interveners, who opened the store with them on Monday morning. That on Monday, after the levy of the writ of the plaintiff, neither of the two checks having been presented for payment nor having been paid, an agreement was entered into between the interveners and the defendants that the whole of the purchase price of the goods sold, except the $2,500 belonging to G. Lehman, should be deposited with and held by F. J. Dreyfous in trust to protect A. Shwartz & Sons from loss in case their title to the stock of goods should not be maintained. That it appears from the evidence that, from this amount so deposited with Dreyfous, payments were made on the drafts of the defendants, so that the amount was reduced to $27,415.56 down to May 2, 1892, and that subsequently this last amount was turned over to W. S. Benedict, Esq., who received the same, and holds and has paid a portion of the same, as appears from his statement:

"The H. B. Claflin Co. v. H. Kern and Son et als. No. 12,059.

"U. S. Circuit Court.

"Statement of W. S. Benedict.

"There is no written contract respecting the trust established by H. Kern & Son, in view of the attachment, to protect A. Shwartz & Sons. The check

for $37,500, which has been offered in evidence, was held by F. J. Dreyfous as trustee under this trust, and from its proceeds various payments were made by H. Kern & Son down to May 2, 1892. Mr. Dreyfous having retired from the trust, the balance of $27,415.56 was turned over to me as money of H. Kern & Son, to be held in trust for the same purpose, viz. to protect A. Shwartz from danger of double liability in the premises. By consent of H. Kern & Son, the following sums were paid from the said fund of...$27,415 56

viz.: 1st. Stenographers' fees..........................$  368 15

    2d. J. A. Mercier, rent due by H. Kern & Son on the Canal street store up to sale of Feby. 20th, 1892.. 7,083 33

    3d. P. Roberts and B. Titche, attorneys of H. Kern & Son...................................... 1,000 00    8,451 48

      Balance ...............................................$18,964 08

"A balance of $18,500, funds of H. Kern & Son, is held by me under the trust to protect A. Shwartz and Sons in the premises. The further balance of $464.08 is also in my hands, less payments for disbursements incidental to the trust.          W. S. Benedict."

That it also appears that the defendants, after their insolvency, gave information as to this amount so held surrendered by Mr. Dreyfous and Mr. Benedict to the insolvent court, and the terms and conditions upon which it was deposited and held.

The facts as to the defendants' adjudication as insolvents and the proceedings in the insolvent court appear in the findings of the court upon the motions for a new trial filed December 17, 1892, which are adopted and made part of these findings.

Upon these facts two questions arise: First. But for the peculiar arrangement as to the disposition of the price of these goods, and laying that, for the time being, out of consideration, would the sale have been complete, and would the title to the goods have passed to the interveners? There had been a delivery, symbolical and actual. Forty thousand dollars had been given in checks as the estimated price which was to be ascertained by measuring and counting, and the price increased or diminished, and paid or returned, accordingly. I think, laying aside the consideration of the agreement as to price, the case of Shuff v. Morgan, 9 Mart. (La.) 592, is in substance this case. In each case there was a delivery, and nothing remained to be done but the ascertainment of quantity. Articles 2458 and 2459, Rev. Civil Code La. 1889, are but re-enactments of articles 6 and 7 under title 6, p. 346, Code 1808. In the case of Shuff v. Morgan the court held that the rule "res perit domino" was a general, but not a universal, one; that, with complete title in the vendee, for him to run the risk of the destruction of the property sold was of the nature, but not of the essence, of the contract of sale, and that the reservation by the statute of the risk in the vendor did not prevent the title to the thing agreed to be sold passing to the vendor, so as to prevent a creditor of the vendor from making a valid attachment.

There is nothing peculiar in the provision in the contract of sale in this case. It was in substance the same as in Shuff v. Morgan. The whole effect of paragraph 8, when considered in connection with paragraph 6, is that the stock of goods was sold, and the title was vested in the vendors, the interveners. There was to be a tale of the goods to determine the exact amount of the price. The case

of Shuff v. Morgan was decided in the year 1821, and has never been overruled or called in question; so that, so far as concerns the provision as to the tale, the property would have passed.

There remains the question as to what the court must say as to the effect of the arrangement about the price. The facts necessary to be considered are these: A debtor is in failing circumstances. A sale of his whole stock of goods is made. The consideration is $40,000. For this amount checks are given. Before the checks are paid or presented, a creditor levies an attachment. By a secret agreement between the seller and the purchaser, the whole price ($40,000) is placed in trust in the hands of a third person, to indemnify the purchaser against loss by service of the attachment. The legal effect of such a qualification of an agreement to sell is to subordinate the question of who shall receive the consideration to the question as to the validity of the sale. The trustee holds in trust for the vendor in case the sale shall be held to be valid, and for the vendee in case it shall be held to be void, and it is a secret trust. In the eyes of the law the property has been placed beyond the reach of the creditors by the sale. By this secret trust the consideration for the sale also is placed beyond their reach. It is a sale if the attachment is defeated, and no sale if it is maintained. To render a sale valid there must be price. That price cannot conditionally belong to the purchaser. Nor can the indications of a payment be held out which are not according to fact, when the necessary effect of such indications must be to baffle the creditors of the vendor. I think such a transaction, before the checks have been paid, ingrafts upon the sale a qualification which becomes a part of the original agreement of sale, and characterizes it precisely as if it had been made along with it, and that courts must declare a transaction with such a feature invalid, and ineffectual to defeat the rights of the attaching creditor to the extent of his attachment.

The conclusions of law from the facts above found are:

1. That the attachment was dissolved by the insolvency proceedings, in which the defendants made, and the proper court accepted, a surrender of all their property. Section 933, Rev. St., (9 Stat. 213, 214;) especially the intent and meaning of the statute, as shown in the title and as declared in the body of the act.

2. That the plaintiffs have and recover against the defendants $21,728, with interest, as prayed for in their petition, and their entire costs in the cause, and upon the attachment up to the time of the surrender, without any lien or privileges resulting from the attachment.

3. That the intervention of A. Shwartz & Sons be dismissed, and that they pay the costs of the intervention.